# UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

**ANTHONY S.,**[1]

      **Plaintiff,**

                            **Case No. 3:23-cv-23070**

     **v.**                           **Magistrate Judge Norah McCann King**

**FRANK BISIGNANO,**[2]
**Commissioner of Social Security,**

      **Defendant.**

## OPINION AND ORDER

This matter comes before the Court pursuant to Section 205(g) of the Social Security Act, as amended, 42 U.S.C. § 405(g), regarding the application of Plaintiff Anthony S. for Disability Insurance Benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401 *et seq.* Plaintiff appeals from the final decision of the Commissioner of Social Security denying that application. After careful consideration of the entire record, including the entire administrative record, the Court decides this matter pursuant to Rule 78(b) of the Federal Rules of Civil Procedure. For the reasons that follow, the Court affirms the Commissioner's decision.

## I.    PROCEDURAL HISTORY

On December 28, 2018, Plaintiff protectively filed his application for benefits, alleging that he has been disabled since July 15, 2017. R. 88, 100, 172–75. The application was denied

---

[1] The Committee on Court Administration and Case Management of the Judicial Conference of the United States has recommended that, due to significant privacy concerns in social security cases, federal courts should refer to plaintiffs in such cases by only their first names and last initials. *See also* D.N.J. Standing Order 2021-10.

[2] Frank Bisignano, the current Commissioner of Social Security, is substituted as Defendant in his official capacity. *See* Fed. R. Civ. P. 25(d).

initially and upon reconsideration. R. 112–16, 119–21. Plaintiff sought a *de novo* hearing before an administrative law judge ("ALJ"). R. 123–24. ALJ Meryl Lissek held a hearing on May 27, 2020, at which Plaintiff, who was represented by counsel, testified, as did a vocational expert. R. 45–77. In a decision dated June 29, 2020, the ALJ concluded that Plaintiff was not disabled within the meaning of the Social Security Act from July 15, 2017, Plaintiff's alleged disability onset date, through the date of that decision. R. 19–38 ("2020 decision"). Plaintiff appealed to this Court from that decision and, on November 19. 2021, the undersigned issued a Consent Order reversing and remanding the matter for further proceedings by the Commissioner. Stabile v. Comm'r, Case No. 3:41-cv-02965 (D.N.J.); R. 1226–28.

On remand, ALJ Leonard Costa held a hearing on May 1, 2023, at which Plaintiff, who was again represented by counsel, again testified, as did a vocational expert. R. 1172–96. In a decision dated August 28, 2023, the ALJ again concluded that Plaintiff was not disabled within the meaning of the Social Security Act from July 15, 2017, Plaintiff's alleged disability onset date, through the date of that decision. R. 1156–64. It does not appear that Plaintiff filed exceptions to the ALJ's decision and the Appeals Council did not assume jurisdiction, making that decision the final agency decision. *See* 20 C.F.R. § 404.984(a), (d). Plaintiff timely filed this appeal pursuant to 42 U.S.C. § 405(g). ECF No. 1. On December 13, 2023, Plaintiff consented to disposition of the matter by a United States Magistrate Judge pursuant to 28 U.S.C. § 636(c) and Rule 73 of the Federal Rules of Civil Procedure. ECF No. 4.[3] On April 1, 2024, the case was reassigned to the undersigned. ECF No. 9. The matter is ripe for disposition.

---

[3]The Commissioner has provided general consent to Magistrate Judge jurisdiction in cases seeking review of the Commissioner's decision. *See* Standing Order In re: Social Security Pilot Project (D.N.J. Apr. 2, 2018).

## II.    LEGAL STANDARD

### A.    Standard of Review

In reviewing applications for Social Security disability benefits, this Court has the authority to conduct a plenary review of legal issues decided by the ALJ. *Knepp v. Apfel*, 204 F.3d 78, 83 (3d Cir. 2000).  In contrast, the Court reviews the ALJ's factual findings to determine if they are supported by substantial evidence. *Sykes v. Apfel*, 228 F.3d 259, 262 (3d Cir. 2000); *see also* 42 U.S.C. § 405(g). The United States Supreme Court has explained this standard as follows:

> Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains sufficien[t] evidence to support the agency's factual determinations. And whatever the meaning of substantial in other contexts, the threshold for such evidentiary sufficiency is not high. Substantial evidence, this Court has said, is more than a mere scintilla. It means – and means only – such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.

*Biestek v. Berryhill*, 587 U.S. 97, 102–03 (2019) (internal citations and quotation marks omitted); *see also Pierce v. Underwood*, 487 U.S. 552, 565 (1988) (citation and internal quotations omitted); *Bailey v. Comm'r of Soc. Sec.*, 354 F. App'x 613, 616 (3d Cir. 2009) (citations and quotations omitted); *K.K. ex rel. K.S. v. Comm'r of Soc. Sec.*, No. 17-2309, 2018 WL 1509091, at *4 (D.N.J. Mar. 27, 2018).

The substantial evidence standard is a deferential standard, and the ALJ's decision cannot be set aside merely because the Court "acting de novo might have reached a different conclusion." *Hunter Douglas, Inc. v. NLRB*, 804 F.2d 808, 812 (3d Cir. 1986); *see, e.g., Fargnoli v. Massanari*, 247 F.3d 34, 38 (3d Cir. 2001) ("Where the ALJ's findings of fact are supported by substantial evidence, we are bound by those findings, even if we would have decided the factual inquiry differently.") (citing *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999)); *K.K.*,

3

2018 WL 1509091, at *4 ("'[T]he district court ... is [not] empowered to weigh the evidence or substitute its conclusions for those of the fact-finder.'") (quoting *Williams v. Sullivan*, 970 F.2d 1178, 1182 (3d Cir. 1992)).

Nevertheless, the Third Circuit cautions that this standard of review is not "a talismanic or self-executing formula for adjudication." *Kent v. Schweiker*, 710 F.2d 110, 114 (3d Cir. 1983) ("The search for substantial evidence is thus a qualitative exercise without which our review of social security disability cases ceases to be merely deferential and becomes instead a sham."); *see Coleman v. Comm'r of Soc. Sec.*, No. 15-6484, 2016 WL 4212102, at *3 (D.N.J. Aug. 9, 2016). The Court has a duty to "review the evidence in its totality" and "take into account whatever in the record fairly detracts from its weight." *K.K.*, 2018 WL 1509091, at *4 (quoting *Schonewolf v. Callahan*, 972 F. Supp. 277, 284 (D.N.J. 1997) (citations and quotations omitted)); *see Cotter v. Harris*, 642 F.2d 700, 706 (3d Cir. 1981) (stating that substantial evidence exists only "in relationship to all the other evidence in the record"). Evidence is not substantial if "it is overwhelmed by other evidence," "really constitutes not evidence but mere conclusion," or "ignores, or fails to resolve, a conflict created by countervailing evidence." *Wallace v. Sec'y of Health & Human Servs.*, 722 F.2d 1150, 1153 (3d Cir. 1983) (citing *Kent*, 710 F.2d at 114); *see K.K.*, 2018 WL 1509091, at *4. The ALJ's decision thus must be set aside if it "did not take into account the entire record or failed to resolve an evidentiary conflict." *Schonewolf*, 972 F. Supp. at 284-85 (citing *Gober v. Matthews*, 574 F.2d 772, 776 (3d Cir. 1978)).

Although an ALJ is not required "to use particular language or adhere to a particular format in conducting [the] analysis," the decision must contain "sufficient development of the record and explanation of findings to permit meaningful review." *Jones v. Barnhart*, 364 F.3d 501, 505 (3d Cir. 2004) (citing *Burnett v. Comm'r of Soc. Sec.*, 220 F.3d 112, 119 (3d Cir.

4

2000)); *see K.K.*, 2018 WL 1509091, at *4. The Court "need[s] from the ALJ not only an expression of the evidence s/he considered which supports the result, but also some indication of the evidence which was rejected." *Cotter*, 642 F.2d at 705-06; *see Burnett*, 220 F.3d at 121 ("Although the ALJ may weigh the credibility of the evidence, [s/]he must give some indication of the evidence which [s/]he rejects and [the] reason(s) for discounting such evidence.") (citing *Plummer v. Apfel*, 186 F.3d 422, 429 (3d. Cir. 1999)). "[T]he ALJ is not required to supply a comprehensive explanation for the rejection of evidence; in most cases, a sentence or short paragraph would probably suffice." *Cotter v. Harris*, 650 F.2d 481, 482 (3d Cir. 1981). Absent such articulation, the Court "cannot tell if significant probative evidence was not credited or simply ignored." *Id.* at 705. As the Third Circuit explains:

> Unless the [ALJ] has analyzed all evidence and has sufficiently explained the weight [s/]he has given to obviously probative exhibits, to say that [the] decision is supported by substantial evidence approaches an abdication of the court's duty to scrutinize the record as a whole to determine whether the conclusions reached are rational.

*Gober*, 574 F.2d at 776; *see Schonewolf*, 972 F. Supp. at 284-85.

Following review of the entire record on appeal from a denial of benefits, the Court can enter "a judgment affirming, modifying, or reversing the decision of the [Commissioner], with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). Remand is appropriate if the record is incomplete or if the ALJ's decision lacks adequate reasoning or contains illogical or contradictory findings. *See Burnett*, 220 F.3d at 119-20; *Podedworny v. Harris*, 745 F.2d 210, 221-22 (3d Cir. 1984). Remand is also appropriate if the ALJ's findings are not the product of a complete review which "explicitly weigh[s] all relevant, probative and available evidence" in the record. *Adorno v. Shalala*, 40 F.3d 43, 48 (3d Cir. 1994) (internal quotation marks omitted); *see A.B. on Behalf of Y.F. v. Colvin*, 166 F. Supp.3d 512, 518 (D.N.J. 2016).

### B.    Sequential Evaluation Process

The Social Security Act establishes a five-step sequential evaluation process for determining whether a plaintiff is disabled within the meaning of the statute. 20 C.F.R. § 404.1520(a)(4). "The claimant bears the burden of proof at steps one through four, and the Commissioner bears the burden of proof at step five." *Smith v. Comm'r of Soc. Sec.*, 631 F.3d 632, 634 (3d Cir. 2010) (citing *Poulos v. Comm'r of Soc. Sec.*, 474 F.3d 88, 92 (3d Cir. 2007)).

At step one, the ALJ determines whether the plaintiff is currently engaged in substantial gainful activity. 20 C.F.R. § 404.1520(b).  If so, then the inquiry ends because the plaintiff is not disabled.

At step two, the ALJ decides whether the plaintiff has a "severe impairment" or combination of impairments that "significantly limits [the plaintiff's] physical or mental ability to do basic work activities[.]" 20 C.F.R. § 404.1520(c). If the plaintiff does not have a severe impairment or combination of impairments, then the inquiry ends because the plaintiff is not disabled.  Otherwise, the ALJ proceeds to step three.

At step three, the ALJ decides whether the plaintiff's impairment or combination of impairments "meets" or "medically equals" the severity of an impairment in the Listing of Impairments ("Listing") found at 20 C.F.R. § 404, Subpart P, Appendix 1. 20 C.F.R. § 404.1520(d). If so, then the plaintiff is presumed to be disabled if the impairment or combination of impairments has lasted or is expected to last for a continuous period of at least 12 months. *Id*. at § 404.1509. Otherwise, the ALJ proceeds to step four.

At step four, the ALJ must determine the plaintiff's residual functional capacity ("RFC") and determine whether the plaintiff can perform past relevant work. 20 C.F.R. § 404.1520(e), (f).

If the plaintiff can perform past relevant work, then the inquiry ends because the plaintiff is not disabled. Otherwise, the ALJ proceeds to the final step.

At step five, the ALJ must decide whether the plaintiff, considering the plaintiff's RFC, age, education, and work experience, can perform other jobs that exist in significant numbers in the national economy. 20 C.F.R. § 404.1520(g). If the ALJ determines that the plaintiff can do so, then the plaintiff is not disabled. Otherwise, the plaintiff is presumed to be disabled if the impairment or combination of impairments has lasted or is expected to last for a continuous period of at least twelve months.

## III.    ALJ DECISION AND APPELLATE ISSUES

Plaintiff was insured for Disability Insurance Benefits through December 31, 2024. R. 1158. He was 43 years old on July 15, 2017, his alleged disability onset date. R. 1162. At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity between that date and the date of the decision. R. 1158.

At step two, the ALJ found that Plaintiff suffered from the following severe impairments: status post stage III colon cancer; status post chemotherapy; neuropathy; sequelae of exposure to World Trade Center site on 9/11, including malignant neoplasm of colon; chronic rhinitis; chronic sinusitis; chronic obstructive pulmonary disease ("COPD"); and sleep apnea. *Id*. The ALJ also found that anemia and an adjustment disorder were not severe impairments. R. 1159.

At step three, the ALJ found that Plaintiff did not suffer an impairment or combination of impairments that met or medically equaled the severity of any Listing. *Id*.

At step four, the ALJ found that Plaintiff had the RFC to perform sedentary work subject to various additional limitations. R. 1160–62. The ALJ also found that this RFC did not permit the performance of Plaintiff's past relevant work as a police officer. R. 1162.

7

At step five and relying on the testimony of the vocational expert, the ALJ found that a significant number of jobs—*e.g.*, jobs as an addresser, a lens inserter, and a document preparer—existed in the national economy and could be performed by Plaintiff with that RFC. R. 1162–63. The ALJ therefore concluded that Plaintiff was not disabled within the meaning of the Social Security Act from July 15, 2017, his alleged disability onset date, through the date of the decision. R. 1164.

Plaintiff disagrees with the ALJ's findings at step four and asks that the decision of the Commissioner be reversed and remanded with directions for the granting of benefits or, alternatively, for further proceedings. *Plaintiff's Brief,* ECF No. 11. The Commissioner takes the position that his decision should be affirmed in its entirety because the ALJ's decision correctly applied the governing legal standards, reflected consideration of the entire record, and was supported by sufficient explanation and substantial evidence. *Defendant's Brief*, ECF No. 13.

## IV.  SUMMARY OF RELEVANT MEDICAL EVIDENCE

### A.    Iris Udasin, M.D.

On March 12, 2020, Iris Udasin, M.D., Plaintiff's treating physician, completed a two-page, check-the-box, and fill-in-the-blank form entitled "Capacity Questionnaire." R. 1126–27 ("March 2020 opinion"). Dr. Udasin stated that Plaintiff could not work full-time or even engage in "[p]art-time transitional work" and that Plaintiff could not sit continuously for up to 8 hours. R. 1126. Plaintiff could occasionally (meaning 1% to 33% of the time) climb stairs, stoop, kneel/crawl, and reach desk level, but could never climb ladders, balance/heights, reach overhead, handle or finger with his hands, or lift/carry any weight. *Id*. Plaintiff also "needs to be close to restroom facilities[.]" R. 1127. Asked whether there were any accommodative measures that would allow Plaintiff to increase his work capacity, Dr. Udasin responded, "N/A for police

work—extremely frequent bowel movements – no appropriate rehab[.]" *Id*. According to Dr.

Udasin, his opinion was based on Plaintiff's self-reported severity of symptoms and objective

findings. *Id*.

On August 28, 2020, Dr. Udasin completed a six-page, check-the-box, and fill-in-the-

blank "Medical Source Statement of Ability to Do Work-Related Activities (Physical)." R.

1341–46 ("August 2020 opinion"). Dr. Udasin opined that Plaintiff could occasionally (meaning

up to one-third of the time) lift and carry up to 10 pounds; could sit for one hour at a time for a

total of two hours and could stand and walk for a total of one hour. R. 1341–42. Explaining these

limitations, Dr. Udasin wrote: "minimal activity → can't sit or stand for long periods of time due

to neuropathy[.]" R. 1342. Plaintiff did not require a cane to ambulate, *id*., and had no limitations

in the use of his hands or feet, R. 1343. Plaintiff could occasionally climb stairs and ramps, but

could never climb ladders/scaffolds, balance, stoop, kneel, crouch, or crawl. R. 1344. Dr. Udasin

did not identify the medical or clinical findings that supported this assessment. *Id*. Plaintiff could

occasionally operate a motor vehicle, be exposed to humidity and wetness and vibrations, but

could never be exposed to unprotected heights; moving mechanical parts; dust, odors, fumes, and

pulmonary irritants; extreme cold; and extreme heat. R. 1345 (indicating further that limitations

on noise were "N/A"). Plaintiff could not travel without a companion for assistance, but could

perform activities like shopping; could ambulate without an assistive device; could walk one

block at a reasonable pace on rough or uneven surfaces; could use standard public transportation;

could climb a few steps at a reasonable pace with the use of a single hand rail; could prepare a

simple meal and feed himself; could care for his personal hygiene; and could sort, handle, or use

paper/files. R. 1346. Asked to identify other work-related activities that were affected by his

patient's impairments, Dr. Udasin responded, "not able to do police work[.]" *Id*. According to

Dr. Udasin, the identified limitations had lasted or would last for 12 consecutive months. *Id*.[4]

In a letter addressed "To Whom It May Concern," and dated April 18, 2023, Dr. Udasin

stated as follows:

> This letter is in reference to [Plaintiff] who has been a member of the World Trade Health Program under the care of Dr. Iris Udasin at the Clinical Center of Excellence at Rutgers University since 2006. Our evaluations include a comprehensive medical history, yearly physical examinations inclusive of spirometry testing, blood and urine testing, as well as an evaluation by a psychologist as it relates to [Plaintiff's] exposure to toxins at the World Trade disaster site.
>
> Based upon the above testing and continued examinations, [Plaintiff] has been certified for treatment for the following conditions under the WTCHP:
>
> Date Certified- 2/25/2019- Obstructive Sleep Apnea- G47.33
> Date Certified- 7/20/2017- Malignant Neoplasm of Ascending Colon — C18.2
> Date Certified- 7/1/2011-Chronic Airway Obstruction Not Elsewhere Classified-J44.9
> Date Certified- 7/1/2011- Chronic Pharyngitis -J31.2
> Date Certified- 7/1/2011- Chronic Nasopharyngitis- J31.1
> Date Certified- 7/1/2011- Chronic rhinitis- J31.0
> Date Certified- 7/1/2011- Unspecified adjustment reaction- F43.20
> Date Certified- 7/1/2011- Unspecified sinusitis (chronic)- J32.9
>
> I strongly believe the above medical conditions and complications thereof, were caused or exacerbated by [Plaintiff's] exposure to toxins at the WTC site. [Plaintiff] a development [sic] of neuropathy bilateral hands due to the Colon Cancer, he experiences less of strength, tingling and numbness in his hands and feel [sic]. [Plaintiff] struggles holding object[s] without dropping them. Because of these certified conditions, [Plaintiff] is 100% totally and permanently disabled from the ability to perform his regular and assigned duties as a Port Authority Police Officer, 2018. [Plaintiff's] disabilities are in whole, and enhanced by his Malignant Neoplasm of Ascending Colon.

R. 1362 ("April 2023 letter").

## B.    State Agency Reviewing Medical Consultants

Raymond Briski, M.D., conducted an initial review of Plaintiff's medical record on

---

[4] Dr. Udasin did not opine as to when these limitations first presented. *Id.*.

behalf of the state agency on May 22, 2019. R. 78–87; *see also* R. 88 (reflecting Dr. Briski's credentials). Dr. Briski found that Plaintiff's large intestine cancer was not severe, assessing as follows:

> Claimant has a history of colon cancer, resected, with no evidence of current disease (3/13/19 oncology TP office visit note). Neuropathy from chemotherapy is mentioned in the MER, but on the 2/20/19 Oncology TP office visit his performance status is rated as "fully active", able to carry on all pre-disease performance without restriction. Neurologic/musculoskeletal exam was within normal limits. Based on the above, the current claim rating is not severe. Based on the above, the TP limitations of 5 lbs. lifting and difficulty using hands are not wholly supported.

R. 84–85. Dr. Briski concluded that Plaintiff was not disabled. R. 87.

State agency medical consultant Lloyd Marks[5] reviewed Plaintiff's medical record upon reconsideration for the state agency on August 22, 2019. R. 89–99. Consultant Marks agreed with Dr. Briski that Plaintiff's large intestine cancer was not severe. R. 95. According to Consultant Marks, Plaintiff could stand and/or walk about 6 hours in an 8-hour workday; could sit about 6 hours in an 8-hour workday; could lift and/or carry up to 20 pounds occasionally (meaning one-third or less of an 8-hour day) and 10 pounds frequently (meaning more than one-third and up to two-thirds of an 8-hour day), and had no postural, manipulative, visual, communicative, or environmental limitations. R. 96–97. Consultant Marks make the following factual findings upon his reconsideration analysis:

RECON DIB, DENIAL ON 5/28/19.

ALLEGES WORSENING. NO NEW CONDITION.

DR. DRESSER – EXAM 3/2018 – WNL IMP – DOING WELL.

OCHARD MEDICAL GRP – EXAM 5/2019 – WNL. NORMAL ROM.

---

[5] While the Commissioner refers to him as "Lloyd Marks M.D.," *Defendant's Brief*, ECF No. 13, p. 6, this consultant's credentials were not immediately apparent in the record.

> RWJ SLEEP D/O CTR – EXAM 1/2019 – CLT HAS MODERATE OSA.
>
> CLT'S PRFC LIMITS HIM TO LIGHT WORK. HE CANNOT RETURN TO
> PRWR. PRW EXPEDITE IS USED. DISABILITY IS DENIED.

R. 95; *see also* R. 98 (reflecting a finding of not disabled). Under the heading "RFC – Additional

Explanation[,]" Consultant Marks further explained that Plaintiff "has well documented lumbar

DDD. In my opinion he should be restricted to light work." R. 97.

## V.    DISCUSSION

### A.    RFC Determination

In the case presently before the Court, the ALJ determined that Plaintiff had the RFC to

perform a limited range of sedentary work:

> The claimant has the residual functional capacity to perform sedentary work as
> defined in 20 CFR 404.1567(a) except the claimant can sit up to six hours during
> an eight-hour workday but no more than one half-hour at a time, and then would
> need to stand/shift positions for two minutes. The claimant can occasionally climb
> ramps and stairs, stoop, kneel, crouch, balance, or crawl. The claimant can never
> climb ladders, ropes, or scaffolds. The claimant can occasionally push/pull controls
> with the upper and/or lower extremities. The claimant can frequently handle and
> finger objects. The claimant can have no exposure to extremes in environmental
> conditions, or to concentrated pulmonary irritants. The claimant must have ready
> access to a restroom. *The claimant would be off-task approximately ten percent of
> the time during an eight-hour workday.*

R. 1160 (emphasis added). Plaintiff argues that substantial evidence does not support this RFC

determination because the ALJ failed to build a logical bridge between the evidence and the

restriction of "approximately" 10% off task, failed to properly consider Plaintiff's subjective

statements, and failed to properly consider the opinions of the reviewing state agency medical

consultants. *Plaintiff's Brief*, ECF No. 11, pp. 9–18. For the reasons that follow, Plaintiff's

arguments are not well taken.

A claimant's RFC is the most that the claimant can do despite his limitations. 20 C.F.R. §

404.1545(a)(1). At the administrative hearing stage, it is the ALJ who is charged with

12

determining the claimant's RFC. 20 C.F.R. § 404.1546(c); *see also Chandler v. Comm'r of Soc. Sec.*, 667 F.3d 356, 361 (3d Cir. 2011) ("The ALJ—not treating or examining physicians or State agency consultants—must make the ultimate disability and RFC determinations.") (citations omitted). When determining a claimant's RFC, the ALJ has a duty to consider all the evidence. *Plummer v. Apfel*, 186 F.3d 422, 429 (3d Cir. 1999). However, the ALJ need include only "credibly established" limitations. *Rutherford v. Barnhart*, 399 F.3d 546, 554 (3d Cir. 2005); *see also Zirnsak v. Colvin*, 777 F.3d 607, 615 (3d Cir. 2014) (stating that the ALJ has discretion to choose whether to include "a limitation [that] is supported by medical evidence, but is opposed by other evidence in the record" but "[t]his discretion is not unfettered—the ALJ cannot reject evidence of a limitation for an unsupported reason" and stating that "the ALJ also has the discretion to include a limitation that is not supported by any medical evidence if the ALJ finds the impairment otherwise credible").

In this case, when crafting the RFC determination, the ALJ considered years of record evidence, including, *inter alia*, Plaintiff's cancer diagnosis, the July 2017 laparoscopic resection which Plaintiff tolerated well, the administration of chemotherapy from August 2017 to November 2017; Plaintiff's peripheral bilateral median neuropathy at the wrists, which was described as "mild" and "very mild" and which was characterized by numbness, tingling, and muscle cramps of the hands, worse on the right; Plaintiff's multiple neurological examinations, including examinations conducted on October 24, 2018, and n February 20, 2019, which revealed normal sensation and motor strength; Plaintiff's diagnoses of COPD, sleep apnea, rhinitis, and sinusitis, as to which the ALJ found "no indication that they are severe to the degree alleged", referring to treatment notes that  described Plaintiff's COPD as "asymptomatic," and noting that "spirometry values show no obstruction"; multiple respiratory examinations

reflecting consistently normal findings, including: "unlabored" breathing, "normal" air entry, "normal" breath sounds, "clear" lungs bilaterally, and normal chest wall movement and respiratory effort; Plaintiff's denial of shortness of breath, wheezing, and dyspnea; a chest x-ray that showed no acute pulmonary disease; and the description of Plaintiff's sleep apnea as "moderate" in severity and treatment notes that indicated that Plaintiff did not use the CPAP machine that had been provided to him. R. 1161.

In challenging the ALJ's RFC determination, Plaintiff first complains that the ALJ failed to explain how he calculated that Plaintiff would be off-task approximately 10% of the work day, rather than the 15% or 20% that the vocational expert testified would be work-preclusive. *Plaintiff's Brief*, ECF No. 11, pp. 10–11. No acceptable medical source, Plaintiff notes, opined that he would be off task approximately 10% of the workday and, in fact, his treating physician, Dr. Udasin, "opined [that] Plaintiff would be off task such that he would be unable to complete an eight-hour workday[.]" *Id*. at 10 (citing R. 1342 (excerpt from August 2020 opinion), 1362 (April 2023 letter)). Plaintiff also refers to his own testimony that he has "significant fatigue when he exerts himself" and that he "reported in his Function Report that he has difficulty sustaining activity fore [sic] more than an hour[.]" *Id*. at 11 (citing R. 66, 220). Plaintiff characterizes the ALJ's off-task finding of 10% as unexplained and simply the ALJ's improper lay interpretation of raw medication data. *Id*.

The Court is not persuaded that this issue requires remand. As a preliminary matter, to the extent that Plaintiff suggests that the ALJ must support every RFC limitation with a matching medical opinion, he is mistaken. *See* 20 C.F.R. § 404.1527(e), 404.1546(c); *see also Chandler*, 667 F.3d at 361 ("The ALJ—not treating or examining physicians or State agency consultants— must make the ultimate disability and RFC determinations.") (citations omitted). "There is no

legal requirement that a physician have made the particular findings that an ALJ adopts in the course of determining an RFC." *Titterington v. Barnhart*, 174 F. App'x 6, 11 (3d Cir. 2006); *see also Mays v. Barnhart*, 78 F. App'x 808, 813 (3d Cir. 2003) ("Primarily, the ALJ is responsible for making a residual functional capacity determination based on the medical evidence, and he is not required to seek a separate expert medical opinion."). Notably, "the ALJ is not precluded from reaching RFC determinations without outside medical expert review of each fact incorporated into the decision." *Chandler*, 667 F.3d at 362.

Moreover, Plaintiff has not established that his impairments warrant a greater off-task restriction than was found by the ALJ. Although Plaintiff asserts that Dr. Udasin "opined [that] Plaintiff would be off task such that he would be unable to complete an eight-hour workday[,]" *Plaintiff's Brief*, ECF No. 11, p. 10 (citing R. 1342, 1362), Dr. Udasin never offered such an opinion. Rather, in the August 2020 opinion, the doctor opined that Plaintiff could, at one time, sit, stand, and walk for one hour and, in an eight-hour work day, sit for a total of 2 hours, stand for a total of 1 hour, and walk for a total of 1 hour, explaining "minimal activity → can't sit or stand for long periods of time due to neuropathy[.]" R. 1342. The doctor's April 2023 letter states that Plaintiff is unable to work as a police officer due to his impairments. R. 1362. Although the ALJ agreed with Dr. Udasin that Plaintiff could no longer work as a police officer, the ALJ found the doctor's sitting/standing/walking limitations were unsupported and inconsistent with record evidence and were therefore unpersuasive. R. 1161–62.[6] Notably,

───────────────

[6] The ALJ specifically considered Dr. Udasin's opinion and the April 2023 letter as follows:

> In determining the claimant's residual functional capacity, I also considered the opinion of Iris Udasin, M.D., who found on March 12, 2020 that the claimant can occasionally stoop, kneel, crawl, and reach at desk level; and that he can never balance, reach overhead, finger, or lift or carry ten pounds. (Exhibit 29F, 1). I note, however, that in a subsequent assessment on August 28, 2020, Dr. Udasin

Plaintiff does not challenge the ALJ's rejection of Dr. Udasin's opined sitting/standing/walking restrictions in the August 2020 opinion. *See generally Plaintiff's Brief*, ECF No. 11.

Plaintiff's reliance on his hearing testimony and Function Report are similarly unavailing. Plaintiff argues that he "testified that he experiences significant fatigue when he exerts himself[.]" *Id*. at 11 (citing R. 66). However, at the May 27, 2020, administrative hearing, Plaintiff testified, "Like if I try to do something and *overexert* myself, it will fatigue me for the day. I have to limit it, and pace myself. More than not, if I'm having a bad day with the hands, I just can't do anything around the house." R. 66 (emphasis added). Plaintiff does not explain how the ALJ's RFC for a limited range of sedentary work, R. 1160, "overexerts" him or otherwise fails to adequately accommodate his limitations. *See generally Plaintiff's Brief*, ECF No. 11. Plaintiff also contends that he "reported in his Function Report that he has difficulty sustaining activity fore [sic] more than an hour[.]" *Id*. at 11 (citing R. 220). Notably, however, his Function Report addressed only his ability to perform housework and yardwork: "Light cleaning is weekly not more than one hour. Yardwork is seasonal not more than an hour without rest." R. 220.

---

concluded that the claimant has no limitation using his hands, and that he can lift and carry up to ten pounds occasionally. (Exhibit 33F, 2, 3). Dr. Udasin also concluded in her August 28, 2020 assessment that the claimant can only sit for a total of two hours during an eight-hour workday, and stand and walk for a total of one hour during an eight-hour workday. (Id. at 3). I find these opinions unpersuasive since they are unsupported by the treatment evidence of record, including the above-cited findings upon physical examinations, which establishes that the claimant is not so limited to such extent. I further note that Dr. Udasin's opinions, which were rendered only five and a half months apart, are inconsistent with each other. I do find persuasive Dr. Udasin's specific conclusion on August 28, 2020 and on April 18, 2023 that the claimant is unable to perform his past work as a policeman. (Exhibit 33F, 6; Exhibit 35F, 1). While Dr. Udasin's conclusion on this issue is more a vocational assessment rather that a medical opinion, it is nevertheless consistent with the evidence, which establishes that the claimant is, in fact, unable to perform the functional requirements of his past work.

R. 1161–62.

Plaintiff fails to explain—and it is not apparent to the Court—how these statements regarding only housecleaning and yardwork undermine the ALJ's 10% off-task limitation, nor do they otherwise support a greater off-task restriction while performing sedentary work. *See generally Plaintiff's Brief*, ECF No. 11. In short, Plaintiff has not established that any alleged error by the ALJ in failing to more fully explain the 10% off-task limitation requires remand.[7]

Plaintiff also argues that the ALJ's finding that Plaintiff would be off task "approximately" 10% of a workday is overly vague and undefined. *Plaintiff's Brief*, ECF No. 11, pp. 12–13. According to Plaintiff, the use of the word "approximately" "suggests that on some occasions Plaintiff will be off task greater than 10% of the workday, possibly greater than 15% of the workday." *Plaintiff's Brief*, ECF No. 11, p. 12. The use of the word "approximately," Plaintiff contends, injected error into the RFC analysis, because the vocational expert testified that being off task 15% or more was work-preclusive. *Id.* (arguing further that the hypothetical posed to the vocational expert was therefore similarly flawed) (citing R. 1194).

This Court disagrees. The term "approximate" is defined as "nearly correct or exact: close in value or amount but not precise[.]" *Approximate, Merriam-Webster* (2025), https://www.merriam-webster.com/dictionary/approximate (last visited Nov. 14, 2025). As the Commissioner points out, *Defendant's Brief*, ECF No. 13, p. 15, and because Plaintiff does not disagree, there is no indication that the ALJ, the vocational expert, Plaintiff, or his counsel understood the word to have any different meaning or were otherwise confused by the term used by the ALJ. Specifically, the ALJ posed the hypothetical question to the vocational expert that

---

[7] To the extent that Plaintiff asserts in a single sentence, *Plaintiff's Brief*, ECF No. 11, p. 10, that substantial evidence does not support the hypothetical posed to the vocational expert, which assumed a claimant with Plaintiff's vocational profile and the RFC ultimately found by the ALJ, R. 1160, 1191–92, that argument fails for the same reasons just discussed.

assumed a claimant with Plaintiff's vocational profile and the RFC found by the ALJ, including a

restriction that Plaintiff would be "off task approximately ten percent of the workday." R. 1191–

93. The vocational expert did not express confusion or seek clarification of that term. *See* R.

1192–93. Plaintiff, who was represented by counsel at the administrative hearing, did not ask the

ALJ to clarify the term "approximately" or otherwise object to the hypothetical posed to the

vocational expert. R. 1191–95 (reflecting that counsel declined the opportunity to ask the

vocational expert any questions). At bottom, the term "approximately" "is not so ambiguous that

this Court must vacate the ALJ's decision and remand for reconsideration." *Merenda v.*

*Berryhill*, No. 3:18-CV-8777-BRM, 2019 WL 4746461, at *4 (D.N.J. Sept. 30, 2019) (stating

further that "[e]ven if the Court were to find the term 'concentrated' exposure to be ambiguous,

Merenda's counsel had an opportunity to cross-examine the vocational expert and—to the extent

the term is ambiguous—clarify the meaning of 'concentrated' exposure, but did not do so. . . .

Merenda cannot now urge reversal on a ground not appropriately raised at the hearing"); *see also*

*Walck v. Colvin*, No. 115CV01265CCCGBC, 2017 WL 3405115, at *7 (M.D. Pa. Mar. 17,

2017), *report and recommendation adopted sub nom. Walck v. Berryhill*, No. 1:15-CV-1265,

2017 WL 3394399 (M.D. Pa. Aug. 8, 2017) (rejecting the claimant's argument that a restriction

was ambiguous where "Plaintiff failed to question the VE regarding any of these alleged

ambiguities at either hearing despite being represented by counsel").

 Plaintiff also complains that, although the ALJ specified that Plaintiff could sit for up to

six hours in an eight-hour workday, "the ALJ did not define how long Plaintiff could stand and

walk, other than to describe his general ability to perform sedentary work." *Plaintiff's Brief*, ECF

No. 11, p. 12. The ALJ's failure to explicitly define these exertional abilities, Plaintiff argues,

"left the RFC overly vague and open to interpretation by the vocational expert." *Id.* at p. 13. This

Court again disagrees. The ALJ concluded that Plaintiff could perform sedentary work with, among other restrictions, the ability to sit for six hours with an option to stand/shift positions for two minutes every half hour. R. 1160. Although the ALJ did not expressly define the amount of time that Plaintiff could stand and/or walk, that omission is not fatal: SSR 96-9p provides, in relevant part, that "[t]he full range of sedentary work requires that an individual be able to stand and walk for a total of approximately 2 hours during an 8-hour workday" and that "an individual must be able to remain in a seated position for approximately 6 hours of an 8-hour workday[.]" SSR 96-9p, 1996 WL 374185, at *6 (July 2, 1996). In other words, implicit in the ALJ's finding that Plaintiff could perform sedentary work and could sit up to six hours in a workday was the finding that Plaintiff could also stand and walk for a total of approximately two hours. *Id.*; *see also* R. 1160; *Granados v. Comm'r of Soc. Sec.*, No. CIV.A. 13-781 JLL, 2014 WL 60054, at *10 n.8, 9 (D.N.J. Jan. 7, 2014) ("Implicit in the ALJ's finding that Plaintiff could perform sedentary work is the finding that Plaintiff could sit for six hours in an eight-hour workday. . . . [and] that Plaintiff could stand for two hours in an eight-hour workday.") (citing SSR 96–9p).

In short, Plaintiff has not shown that the ALJ's restriction of being off task approximately 10% of the workday and failure to expressly state that Plaintiff could stand and/or walk for a total of two hours in a workday require remand.

### B.    Subjective Complaints

Plaintiff next argues that substantial evidence does not support the ALJ's decision because the ALJ failed to evaluate Plaintiff's hearing testimony and gave no rationale for rejecting his testimony, in violation of SSR 16-3p. *Plaintiff's Brief*, ECF No. 11, pp. 13–16. For the reasons that follow, Plaintiff's arguments do not require remand.

"Subjective allegations of pain or other symptoms cannot alone establish a disability."

*Miller v. Comm'r of Soc. Sec.*, 719 F. App'x 130, 134 (3d Cir. 2017) (citing 20 C.F.R. §

416.929(a)).  Instead, objective medical evidence must corroborate a claimant's subjective

complaints. *Prokopick v. Comm'r of Soc. Sec.*, 272 F. App'x 196, 199 (3d Cir. 2008) (citing 20

C.F.R. § 404.1529(a)).  Specifically, an ALJ must follow a two-step process in evaluating a

claimant's subjective complaints. SSR 16-3p, 2017 WL 5180304 (Oct. 25, 2017). First, the ALJ

"must consider whether there is an underlying medically determinable physical or mental

impairment(s) that could reasonably be expected to produce an individual's symptoms, such as

pain." *Id*. "Second, once an underlying physical or mental impairment(s) that could reasonably

be expected to produce an individual's symptoms is established, [the ALJ] evaluate[s] the

intensity and persistence of those symptoms to determine the extent to which the symptoms limit

an individual's ability to perform work-related activities[.]" *Id*.; *see also Hartranft v. Apfel*, 181

F.3d 358, 362 (3d Cir. 1999) ("[Evaluation of the intensity and persistence of the pain or

symptom and the extent to which it affects the ability to work] obviously requires the ALJ to

determine the extent to which a claimant is accurately stating the degree of pain or the extent to

which he or she is disabled by it.") (citing 20 C.F.R. § 404.1529(c)). In conducting this

evaluation, the ALJ must consider the objective medical evidence as well as other evidence

relevant to a claimant's subjective symptoms. 20 C.F.R. § 404.1529(c)(3) (listing the following

factors to consider: daily activities; the location, duration, frequency, and intensity of pain or

other symptoms; precipitating and aggravating factors; the type, dosage, effectiveness, and side

effects of any medication you take or have taken to alleviate pain or other symptoms; treatment,

other than medication, currently received or have received for relief of pain or other symptoms;

any measures currently used or have used to relieve pain or other symptoms; and other factors

20

concerning your functional limitations and restrictions due to pain or other symptoms). Finally, an "ALJ has wide discretion to weigh the claimant's subjective complaints, *Van Horn v. Schweiker*, 717 F.2d 871, 873 (3d Cir. 1983), and may discount them where they are unsupported by other relevant objective evidence." *Miller*, 719 F. App'x at 134 (citing 20 C.F.R. § 416.929(c)); *see also Izzo v. Comm'r of Soc. Sec.,* 186 F. App'x 280, 286 (3d Cir. 2006) ("[A] reviewing court typically defers to an ALJ's credibility determination so long as there is a sufficient basis for the ALJ's decision to discredit a witness.").

Here, the ALJ followed this two-step evaluation process. Although the ALJ did not specifically detail Plaintiff's specific subjective complaints, the ALJ expressly noted that Plaintiff "alleged an inability to work due to" his impairments. R. 1160; *see also id.* ("I have considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence[.]"), 1158 (reflecting the ALJ's statement that he considered "the entire record"). The ALJ found that Plaintiff's medically determinable impairments could reasonably be expected to cause symptoms, but that Plaintiff's statements "concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision." R. 1160. As previously discussed, the ALJ had detailed years of medical evidence and record testimony, including, *inter alia*, an EMG/NCV study revealing that Plaintiff's bilateral medial neuropathy was "very mild" and the neurological examinations that indicated that Plaintiff exhibited normal sensation and motor strength. R. 1161–62. The ALJ also explained that, "[a]lthough the medical evidence of record confirms that the claimant has the above severe impairments, the evidence of record does not support a finding that they render him unable to perform the demands of a wide range of  exertionally sedentary work." R. 1160. In the

21

view of this Court, this record provides substantial support for the ALJ's decision to discount Plaintiff's subjective statements as inconsistent with the record evidence. *See Van Horn*, 717 F.2d at 873; *Miller*, 719 F. App'x at 134; *Izzo*, 186 F. App'x at 286; *Eckstein v. Comm'r of Soc. Sec.*, No. CIV.A. 13-1111, 2014 WL 1371581, at *17 (W.D. Pa. Apr. 8, 2014) ("The simple fact that the ALJ did not explicitly discuss every subjective claim made by Plaintiff, alone, is not dispositive.").

Plaintiff, however, argues that the ALJ erred because he did not meaningfully analyze Plaintiff's written statements and hearing testimony and offered only boilerplate language regarding this subjective evidence. *Plaintiff's Brief*, ECF No. 11, pp. 14–15. Even assuming—without definitively deciding—that the ALJ erred in failing to expressly articulate the details of Plaintiff's subjective statements, the Court is not persuaded that any such alleged error requires remand. Plaintiff points first to evidence "concerning his daily activities," *Plaintiff's Brief*, ECF No. 11, p. 15 (citing R. 1189–90), and to his testimony that, on a typical day, he "send[s his children] off to school, get[s] them home. they come home from school and that's it. I mean I don't do too much activity outside of dealing with my kids and their activities really." R. 1189. Specifically, "[i]n the morning [I] just get them ready for school buses, seeing them off to school. Make sure they have their lunch. That kind of stuff" and tries to attend as many extracurricular activities that he can. R. 1190. While his kids are at school, Plaintiff watches "a little T.V. Maybe do a little reading." *Id*. He also testified that his wife "mainly" handles the cooking, cleaning, laundry, and shopping for the household. R. 1189. It is not apparent to the Court—and Plaintiff has not explained—how this testimony undermines the ALJ's discounting Plaintiff's allegation that his impairments render him unable to perform a limited range of only sedentary work. *See also Plaintiff's Brief*, ECF No. 11, p. 15.

22

Plaintiff also points to his "treatment for pain." *Plaintiff's Brief*, ECF No. 11, p. 15 (citing R. 1187). However, the hearing testimony cited by Plaintiff on this point simply reflects that he sought treatment for pain in his back and neck and that he took "Lyrica to deal with the pain[.]" R. 1187. However, a "claimant need not be pain-free to be found 'not disabled.'" *Morel v. Colvin*, No. 14-2934, 2016 WL 1270758, at *6 (D.N.J. Apr. 1, 2016); *see also Longboat v. Berryhill*, No. CV 17-146-E, 2018 WL 4157067, at *1 (W.D. Pa. Aug. 30, 2018) (finding, *inter alia*, that the "ALJ did not entirely discount Plaintiff's allegations of pain in his decision; rather, he appropriately found that Plaintiff indeed suffered from moderate pain, but still retained the capacity for light work with additional restrictions"); *cf. Phillips v. Barnhart*, 91 F. App'x 775, 782 (3d Cir. 2004) (considering the claimant's conservative treatment history as a factor that supported the ALJ's determination to discount the claimant's subjective complaints); *Jimenez v. Colvin*, No. 15-3762, 2016 WL 2742864, at *4 (D.N.J. May 11, 2016) (noting that "the *treatment was conservative: medication*, including trigger point injections, and physical therapy") (emphasis added).

Plaintiff next points to his testimony regarding "symptoms of neuropathy[.]" *Plaintiff's Brief*, ECF No. 11, p. 15 (citing R. 1185). At the May 1, 2023, hearing, Plaintiff indicated that he continues to experience "shooting pain that goes down to the arms and everything", that his lower back has gotten "[p]rogressively worse", that he "can't sit for long periods of time, get up. Follows my back and goes into my legs and head", and that he "kind of move[s] around to avoid that pain every [] 30 to 45 minutes." R. 1185.  This testimony establishes that, far from ignoring Plaintiff's subjective complaints, the ALJ specifically accommodated this pain when the ALJ included in the RFC limitations for, *inter alia*, sitting for "no more than one half-hour at a time, and then would need to stand/shift positions for two minutes" and to "occasionally push/pull

controls with the upper and/or lower extremities" and "frequently handle and finger objects." R.

1160; *cf. Longboat v. Berryhill*, No. CV 17-146-E, 2018 WL 4157067, at *1 (W.D. Pa. Aug. 30,

2018) (finding, *inter alia*, that the "ALJ did not entirely discount Plaintiff's allegations of pain in

his decision; rather, he appropriately found that Plaintiff indeed suffered from moderate pain, but

still retained the capacity for light work with additional restrictions").

Plaintiff also refers to his testimony, presented during the first administrative hearing,

regarding "functional limitations", *Plaintiff's Brief*, ECF No. 11, p. 15 (citing R. 61–70) but does

not identify any specific limitations, does not explain how any such limitations undermine the

ALJ's consideration of Plaintiff's subjective complaints, and does not otherwise explain how any

such limitations require additional or different RFC restrictions. *Id*. The Court will not hunt

through this hearing testimony in an attempt to guess what limitations Plaintiff intends to

highlight, nor will the Court construct Plaintiff's arguments for him. *See Atkins v. Comm'r Soc.

Sec.*, 810 F. App'x 122, 129 (3d Cir. 2020) ("'[J]udges are not like pigs, hunting for truffles

buried in the record.'") (quoting *Doeblers' Pa. Hybrids, Inc. v. Doebler*, 442 F.3d 812, 820 n.8

(3d Cir. 2006)) (internal citation omitted)); *United States v. Claxton*, 766 F.3d 280, 307 (3d Cir.

2014) ("[T]his Court has frequently instructed parties that they bear the responsibility to comb

the record and point the Court to the facts that support their arguments."). In any event, the Court

is not persuaded that the ALJ erred in his consideration of Plaintiff's subjective statements, nor is

the Court persuaded that Plaintiff's testimony undermines the sufficiency of the ALJ's RFC. For

example, Plaintiff testified that he is limited in his ability to sit and stand/walk, stating that he

can stand "maybe about 45 minutes to an hour" and that he "can't sit for long periods of time"

and must sit down, or lie down, or get up and stretch and walk. R. 61–62. Plaintiff does not

explain why the RFC—which limits Plaintiff to sedentary work with the additional limitations of

24

sitting for no more than one-half hour at a time with a two-minute stand/shift option and approximately 10% off-task restriction—fails to accommodate Plaintiff's own description of his limitations. R. 1160; *see also Plaintiff's Brief*, ECF No. 11, p. 15. Plaintiff's testimony that he does not go up and down stairs "too often" and that it is difficult to do it "frequently," R. 62–63, is adequately accommodated in the ALJ's RFC, which contains a limitation to only occasionally climbing stairs. R. 1160. Plaintiff also testified that he has pain in his right hand, often drops things, has difficulty opening things, and has difficulty buttoning buttons. R. 63–66. However, Plaintiff, who bears the burden of proof, has not explained why the ALJ's RFC restriction to frequently handling and fingering objects does not adequately address these limitations. R. 1160; *see also Plaintiff's Brief*, ECF No. 11, p. 15. Plaintiff's reliance on his testimony about foot pain is similarly unavailing: He has pain in his feet; "[i]t's not as strong as my hand, but occasionally I'll feel the pins and needles, pain running in my feet, especially if I'm sitting for a long period of time." R. 65 (testifying that he experiences foot pain "[a] few times a week, three to four times a week, at least"). Plaintiff has not explained why the RFC restriction to sedentary work with the accompanying stand/shift option, the off-task time, and the restriction to only occasional push/pull of controls with the lower extremities fails to adequately accommodate this foot pain that occurs three to four times a week. *See Plaintiff's Brief*, ECF No. 11, p. 15. Plaintiff also points to his testimony that he needs to use the bathroom, on average, three to five times per day. R. 69. However, the ALJ's RFC provides that Plaintiff "must have ready access to a restroom" in addition to having approximately 10% off-task time. R. 1160.

Plaintiff also refers to his written Function Report, *Plaintiff's Brief*, ECF No. 11, p. 15 (citing R. 218–25), but again fails to explain how any specific subjective statement in that report undermines the ALJ's consideration of Plaintiff's statements or the RFC determination. Again,

the Court will not comb through this evidence to make Plaintiff's arguments for him. *See Atkins*, 810 F. App'x at 129; *Claxton*, 766 F.3d at 307. In any event, nothing in the Function Report persuades this Court that the ALJ erred in his consideration of Plaintiff's subjective complaints or that substantial evidence does not support the RFC. *See* R. 218 (detailing, *inter alia*, that Plaintiff's activities included helping "get my children ready for school, make breakfast, lunches. Drive them to school. Run basic errands. Light housework. Take a nap. Pick kids up from school. Help with homework and activities. Watch TV. Eat Dinner. Bed" and "Pay the bills"), 219 (expressing "no problem" in his ability to dress, bathe, care for hair, shave, and feed self" and that his use of the toilet is "more frequent and urgent"), 220 (denying needing any special reminders to take care of personal needs, grooming, or taking medication; affirming that he prepared his own meals daily, but that his "wife prepare[d] all hot meals"; stating that he perform[d] "[s]ome light cleaning including dishes. Minor household repairs. Light yardwork. Picking up leaves" and that "light cleaning is weekly not more than one hour. Yardwork is seasonal[;] not more than an hour without rest" and that he went outside on a daily basis), 221 (reflecting that he went out and traveled by walking, driving in a car, riding in a car, and riding a bicycle and affirming that he could go out alone and was able to drive; reporting that he shopped in stores and by computer for groceries, other household needs, and clothing; affirming that he could pay bills, handle a savings account, count change, and use a checkbook/money order; denying that his ability to handle money had changed since his illnesses or conditions began; identifying his weekly hobbies and interests as "watching tv. Coaching youth sports"), 222 (indicating that he is not able to do these hobbies "at the same level as before illness" and that "[d]uration is shorter due to the physical need to rest. Loss of strength"; reflecting that he spends time with others when he "[e]at[s], socialize[s], coach[es] youth sports, kids' play dates" and that

he did these things a "few times a month"; stating that he regularly went to church, sports practices, and family gatherings; denying that he needed to be reminded to go to these places and that he went a "few times a month, participate[d] as much as my body allow[ed]"; denying that he needed someone to accompany him to these places; denying that he had any problem getting along with family, friends, neighbors, or others; stating that his "[a]ctivities ha[d] decreased in number and length"; indicating that his illnesses, injuries, or conditions affected lifting, squatting, reaching, walking, sitting, kneeling, stair climbing, completing tasks, and using hands), 223 (stating that "neuropathy affect[ed] my use of hands including strength"; and that he could not walk "as far as in past. Haven't tested my limits. Usually nap at least once a day"; stating that his ability to pay attention was "dependant [sic] on level of exertion"; denying that he finished what he started; stating he had "no issues" following written and spoken instructions "[d]ependant [sic] on level of exertion prior to instruction"), 224 (stating that he got along "fine" with authority figures; denying that he had ever been fired or laid off from a job because of problems getting along with other people; stating that he handled stress with "[l]imited levels" and handled changes in routine "for the most part"; denying that he had any unusual behavior or fears; indicating that he wore prescription glasses/contacts for reading, watching TV, and driving); 225 (stating that "[r]educed energy levels and endurance limit[ed] my ability to sit, walk, climb stairs, kneel for extended periods of time. Neuropathy also limit[ed] the amount of time I can use my hands, like holding or pencil, without loss of strength of pain").

Based on this record, the Court concludes that the ALJ sufficiently explained his reasoning in assessing Plaintiff's subjective complaints, and the ALJ's findings in this regard are supported by substantial evidence in the record and are therefore entitled to this Court's deference. *See* SSR 16-3p; *Miller*, 719 F. App'x at 134; *cf. Malloy v. Comm'r of Soc. Sec.*, 306

F. App'x. 761, 765 (3d Cir. 2009) ("Credibility determinations as to a claimant's testimony

regarding pain and other subjective complaints are for the ALJ to make.") (citing *Van Horn v.*

*Schweiker*, 717 F.2d 871, 873 (3d Cir. 1983)).[8]

 **C.** **Opinion Evidence**

 Finally, Plaintiff challenges the ALJ's consideration of the state agency reviewing

medical consultants, arguing that the ALJ's error in this regard requires remand. *Plaintiff's Brief*,

ECF No. 11, pp. 16–18. For the reasons that follow, Plaintiff's argument is not well taken.

 An ALJ must evaluate all record evidence in making a disability determination. *Plummer,*

186 F.3d at 433; *Cotter,* 642 F.2d at 704. The ALJ's decision must include "a clear and

satisfactory explication of the basis on which it rests" sufficient to enable a reviewing court "to

perform its statutory function of judicial review." *Cotter*, 642 F.2d at 704–05. Specifically, the

ALJ must discuss the evidence that supports the decision, the evidence that the ALJ rejected, and

explain why the ALJ accepted some evidence but rejected other evidence. *Id*. at 705–06; *Diaz v.*

*Comm'r of Soc. Sec.*, 577 F.3d 500, 505–06 (3d Cir. 2009); *Fargnoli v. Massanari*, 247 F.3d 34,

42 (3d Cir. 2001) ("Although we do not expect the ALJ to make reference to every relevant

treatment note in a case . . . we do expect the ALJ, as the factfinder, to consider and evaluate the

medical evidence in the record consistent with his responsibilities under the regulations and case

law."). Without this explanation, "the reviewing court cannot tell if significant probative

---

[8] Plaintiff's reliance on *Rossi v. Comm'r of Soc. Sec.*, No. , 2020 WL 1872980 (D.N.J. Apr. 15, 2020) does not militate a different result. *Plaintiff's Brief*, ECF No. 11, pp. 14–15. In *Rossi*, the Court found reversible error where, *inter alia*, the ALJ "ignore[d] without comment Plaintiff's testimony regarding how her diverticulitis and headaches affect her every day." *Rossi*, 2020 WL 1872980, at *5. Conversely, in the present case, the above summary reflects that the ALJ's decision adequately addressed Plaintiff's subjective complaints, including through corresponding limitations in the RFC. Accordingly, *Rossi* is inapposite.

evidence was not credited or simply ignored." *Cotter*, 642 F.2d at 705; *see also Burnett,* 220

F.3d at 121 (citing *Cotter*, 642 F.2d at 705).

For claims filed after March 27, 2017,[9] the regulations eliminated the hierarchy of

medical source opinions that gave preference to treating sources. *Compare* 20 C.F.R. § 404.1527

*with* 20 C.F.R. § 404.1520c(a) (providing, *inter alia*, that the Commissioner will no longer "defer

or give any specific evidentiary weight, including controlling weight, to any medical opinion(s)

or prior administrative medical finding(s), including those from [the claimant's] medical

sources"). Instead, the Commissioner will consider the following factors when considering all

medical opinions: (1) supportability; (2) consistency; (3) relationship with the claimant,

including the length of the treating examination, the frequency of examinations, and the purpose

of the treatment relationship; (4) the medical source's specialization; and (5) other factors,

including, but not limited to, "evidence showing a medical source has familiarity with the other

evidence in the claim or an understanding of our disability program's policies and evidentiary

requirements." 20 C.F.R. § 404.1520c(c).

The applicable regulation emphasizes that "the most important factors [that the ALJ and

Commissioner] consider when [] evaluat[ing] the persuasiveness of medical opinions and prior

administrative medical findings are supportability (paragraph (c)(1) of this section) and

consistency (paragraph (c)(2) of this section)." *Id*. at § 404.1520c(a). As to the supportability

factor, the regulation provides that "[t]he more relevant the objective medical evidence and

supporting explanations presented by a medical source are to support his or her medical

opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions

or prior administrative medical finding(s) will be." *Id*. at § 404.1520c(c)(1).  As to the

---

[9] As previously noted, Plaintiff's claim was filed on December 28, 2018.

consistency factor, the regulation provides that "[t]he more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be." *Id*. at § 404.1520c(c)(2).

The regulation further requires the ALJ to articulate his "consideration of medical opinions and prior administrative medical findings" and articulate in the "determination or decision how persuasive [he] find[s] all of the medical opinions and all of the prior administrative medical findings in [the claimant's] case record." *Id*. at § 404.1520c(b). As previously noted, "[s]upportability and consistency are the most important factors. . . . ALJs need not explain their determinations regarding the other factors, but they must discuss supportability and consistency." *Gongon v. Kijakazi*, 676 F. Supp. 3d 383, 394 (E.D. Pa. 2023) (citations omitted); *see also Stamm v. Kijakazi*, 577 F. Supp. 3d 358, 370 (M.D. Pa. 2021) ("Generally, the ALJ may, but is not required to, explain his or her consideration of the other factors, but if there are two equally persuasive medical opinions about the same issue that are not exactly the same, then the ALJ must explain how he or she considered the other factors.").

In the present case, after detailing years of medical and opinion evidence, the ALJ expressly considered the state agency reviewing medical consultants' assessment and found it "persuasive since it is supported by the evidence of record, including the above-cited findings upon physical examinations, which establishes that the claimant's impairments are not severe to the degree alleged." R. 1162 (citing Exhibits 1A (R. 78–87), 3A (R. 89–99). Plaintiff contends that the ALJ's conclusion in this regard is flawed in a number of ways. First, Plaintiff argues that the state agency assessments did not support the ALJ's decision because these consultants found that Plaintiff's only impairment was cancer and that that condition was not severe. *Plaintiff's*

*Brief*, ECF No. 11, p. 17. He next argues that the ALJ found these state agency opinions persuasive "despite their remoteness in time as well as the complete inconsistency between those opinions and the ALJ decision[.]" *Id*. Plaintiff also complains that the ALJ found these opinions persuasive without any analysis or evaluation of the consistency and supportability of such opinions. *Id*. Plaintiff contends that these failures preclude the Court's ability to meaningfully review the decision and that the ALJ's failure to properly explain how he considered the state agency opinions "was harmful because the State agency opinions are relied upon by the ALJ as a basis for his decision, despite the fact that the opinions are entirely inconsistent with the ALJ's decision. Remand is required for full and fair evaluation of the opinion evidence." *Id*. at 17–18.

The Court is not persuaded that this issue requires remand. Even assuming—without conclusively deciding—that the ALJ erred in considering the state agency opinions, Plaintiff has not shown how any such error harmed him. To the extent that these opinions differ from the ALJ's decision, such as in the number and severity of Plaintiff's impairments, any such difference worked to Plaintiff's benefit,. *Compare* R. 84–85 (finding Plaintiff's cancer to be non-severe) and 95 (same) *with* 1158 (finding the severe impairments of status post stage III colon cancer; status post chemotherapy; neuropathy; sequelae of exposure to World Trade Center site on 9/11, including malignant neoplasm of colon; chronic rhinitis; chronic sinusitis; COPD; and sleep apnea). To the extent that Plaintiff complains that the state agency opinions are remote in time, an ALJ may rely on a reviewing state agency physician's findings even where there is a lapse of time between the state agency report and the ALJ's decision. *See Chandler,* 667 F.3d at 361 ("The Social Security regulations impose no limit on how much time may pass between a report and the ALJ's decision in reliance on it. Only where 'additional medical evidence is received that *in the opinion of the [ALJ]* . . . may change the State agency medical . . .

31

consultant's finding that the impairment(s) is not equivalent in severity to any impairment in the Listing,' is an update to the report required.") (emphasis in original) (citations omitted); *Wilson v. Astrue*, 331 F. App'x 917, 919 (3d Cir. 2009) ("Generally, an ALJ is required to consider the reports of State agency medical consultants; however, there is no requirement that an ALJ must always receive an updated report from the State medical experts whenever new medical evidence is available."). Accordingly, the ALJ's failure to more fully explain his finding that these state agency opinions were persuasive is, at most, harmless error and does not require remand. *See Shinseki v. Sanders*, 556 U.S. 396, 409–10 (2009) ("[T]he burden of showing that an error is harmful normally falls upon the party attacking the agency's determination. . . . [T]he party seeking reversal normally must explain why the erroneous ruling caused harm."); *Rutherford v. Barnhart*, 399 F.3d 546, 553 (3d Cir. 2005) (finding that "a remand is not required here because it would not affect the outcome of the case").

## VI.   CONCLUSION

For these reasons, the Court **AFFIRMS** the Commissioner's decision.

The Court will issue a separate Order issuing final judgment pursuant to Sentence 4 of 42 U.S.C. § 405(g).

**IT IS SO ORDERED.**


Date:  November 17, 2025                         *s/Norah McCann King*
                                                NORAH McCANN KING
                                                UNITED STATES MAGISTRATE JUDGE